The petitioners, John Earrusso and Mary Earrusso, are complainants in a cause pending in this court against the Town of Montclair, Catherine Egan, Joseph Egan and Frank Egan, trading as C. Egan Sons. The bill was filed on January 19th, 1933, and by leave of the court, an amended and supplemental bill were filed on February 17th, 1933.
The purpose of the suit is to restrain and enjoin the defendants from performing a certain contract made with the Town of Montclair on January 14th, 1933, except in such manner as will not constitute a breach of the contract between the complainants and the Town of Montclair dated September 30th, 1930.
The Earrussos own a twenty-eight acre tract in East Hanover township, Morris county, which previously the Town of Montclair used as a dump for its "debris and refuse" under a five-year contract dated September 30th, 1930. The town paid $500 a year for the use, as a dump, and $1,200 a year for keeping it fit, as a dump. Until January of this year (1933) the dumpings were free of garbage; garbage and ashes were dumped elsewhere. Recently, the town advertised for proposals for the removal of the town garbage, ashes and rubbish to the dump, separately, under plan number 1, or collectively, under alternate C, and if under alternate C, $15,000 was to be deducted from the bid for separate collection. The town awarded the contract to the defendant C. Egan Sons, at the lowest bid, $290,000, for separate collection, but exercising its option, that the removal be collective, entered into a five-year contract for $275,000. The contractors proceded to gather and dump garbage, ashes and rubbish mixed, and the complainants wanted it stopped; the mixture of ashes and garbage with debris and refuse interfered with their business of salvaging the junk, waste paper, rags, bottles, iron and other articles from the debris and *Page 564 
refuse. An order to show cause with intermediate restraint was made restraining the mixing of the gatherings and from dumping them elsewhere than on the complainants' dump.
On the hearing of the order to show cause on February 22d 1933, why respondents should not be enjoined, a preliminary injunction issued "that Catherine Egan, Joseph Egan and Frank Egan, co-partners trading as C. Egan Sons, their agents and servants, forthwith absolutely desist and refrain from dumping upon complainants' premises garbage or any of the refuse and debris collected by them in the Town of Montclair mixed with garbage or ashes, and that they desist and refrain from dumping any of the refuse and debris except garbage and ashes, excluding from such exceptions, however, three loads of ashes each week during the months of December, January, February and March, at any place other than the property of complainants described in the amended and supplemental bill" and that "the defendant the Town of Montclair forthwith desist and refrain from allowing the contractors, the defendant C. Egan Sons, to collect refuse, debris, garbage and ashes mixed, in the Town of Montclair."
The matter now comes before the court on petition and order to show cause why the respondents should not be held in contempt for violation of the injunction. The respondents file answer, in which they deny that they violated the injunction in effect, but admit that since the 23d day of February, 1933, and since the 17th day of February, 1933, they did not desist and refrain from dumping any of the refuse and debris, except garbage and ashes, excluding from such exceptions, however, three loads of ashes each week during the months of December, January, February and March, at any place other than the property of complainants, and that, since the service of a copy of the order they continued their practice so initiated of collecting refuse, debris and garbage mixed in the Town of Montclair, and dumped at places other than the complainants' premises. By way of justification, however, they say that when they were served with the injunction they caused a notice of appeal from said order, and all of its parts to be filed, and that the effect of *Page 565 
the appeal was to stay the operation of said injunction. The injunction, they claim, not being "designed to maintain a status but to create a status not existing at the time of the making of the said order, and for sometime prior thereto," while negative in form is mandatory in effect, so that to compel respondents to comply with the directions of the same pending appeal would be to destroy the subject-matter of the appeal. Further, the respondents say that it is physically impossible to comply with the order made by this court.
The respondents admit in their argument before me that under the terms of the contract between the town and the Egans, the Egans assumed the obligations of the contract between complainants and the Town of Montclair dated September 30th, 1930.
Hanover township, where the dump is located, by ordinance prohibited the dumping of garbage and the respondents' drivers were arrested and prosecuted under the ordinance. Thereupon, respondents proceeded to dump the mixed debris and garbage elsewhere than upon complainants' lands, with the result that the bill in this cause was filed by complainants.
Now the respondents argue that the existing status at the time of the filing of the bill, was one, where the respondents were not dumping garbage unmixed on complainants' land, but that they were actually dumping elsewhere, and that therefore, our injunction was not one to preserve an existing status, but rather to destroy it and one which directed the respondents to do that which they had not been doing, and therefore, if the respondents are required to perform pending the appeal, the subject-matter of the appeal will be destroyed. With this contention I do not agree.
The existing status at the time of the filing of the bill, amended and supplemental bill, and the issuance of the injunction, undoubtedly was the right of the complainants, petitioners herein, under the contract dated September 30th, 1930, to have the debris and refuse collected and brought to their dump unmixed with garbage, and for more than two years the contract had been so interpreted and acted upon by the parties. The facts and circumstances are fully set *Page 566 
forth in the opinion recently filed by Vice-Chancellor Backes who advised the preliminary injunction. The Vice-Chancellor pointedly says in part of his opinion, "the town, to save $3,000 a year, consciously set out to impose on the complainants, and the contractors, not unwilling, for their own gain, joined in the fraud. The unconscionable conduct is so glaring that milder words would not express the truth."
Our court of errors and appeals laid down the following with reference to when appeals from injunctive orders act as a stay:
"The fundamental thought underlying our decisions on this subject is the preservation of a status quo on which the determination of the appeal may act effectively. So, where for example, there is a preventive injunction, which in the nature of things contemplates the continuance of an existing status, that injunction stands although appealed, and the court of chancery is by the very appeal ousted of jurisdiction to interfere with it while the appeal persists. On the contrary, where the decretal order or injunction, by whatever name known, calls for an alteration in the status of the parties as previously existing, and an appeal is taken, the effect of the appeal is to suspend the operation of such order or injunction until and subject to, the determination of the appeal."
"As a corollary from what has been noted above, it follows that an injunction forbidding disturbance of an existing status must be obeyed pending appeal, and the court of chancery may and should enforce it but cannot modify or annul it; and that an injunction or order requiring a change in the existing status isipso facto suspended by appeal, need not be performed while appeal is pending, and contempt may not be predicated on failure to perform it in that event." Helbig v. Phillips, 109 N.J. Eq. 546.

Having arrived at the conclusion that the appeal does not stay the injunction, counsel will appear for the fixing of a day for the taking of testimony in the matter of the alleged impossibility of performance. *Page 567