THEODOR HELBIG et al., complainants-respondents,

*v.*

JACOB A. PHILLIPS et al., defendants-appellants.

[Submitted October 30th, 1931. Decided February 1st, 1932.]

*Mr. M. Caswell Heine,* for the appellant.

*Mr. Carlyle Garrison,* for the appellees.

The opinion of the court was delivered by

PARKER, J.

The present appeal, which may be characterized as secondary in its nature, brings up an order made in the cause on June 10th, 1930, when the original appeal, from an order dated November 18th, 1929, directing the delivery of certain certificates of stock, was pending in this court and undecided. That earlier appeal was decided October 20th, 1930, by an affirmance on the opinion of the court of chancery, reported in *105 N. J. Eq. 328; per curiam* opinion of this court, *107 N. J. Eq. 138.*

The point taken by the appellant on this appeal, and as we conclude, well taken, is that after the cause had been removed from the court of chancery to this court by an appeal properly taken, the lower court was without jurisdiction to deal with the case in such wise as to impair or alter the subject-matter of the appeal. The particular question involved relates to the power of the court of chancery to enforce obedience to an injunction after appeal from an order awarding such injunction. In dealing with that question as presented in this case it is important at this point to set down with precision the character of the injunctive relief that was awarded.

The facts are fully stated in the opinion of the vice-chancellor, *ubi supra,* and need not be here repeated. The injunctive order of November 18th, 1929, requires "that the defendant Bloomfield Bank and Trust Company forthwith deliver to each of the complainants" (naming them) "or Carlyle Garrison, their solicitor, all certificates of capital stock in its possession or under its control, of Interstate Hosiery Mills, Incorporated, a corporation, which said certificates of stock are drawn in favor of said complainants respectively." Section 10 of the Chancery act of 1915 (*P.*

L. p. 184—at p. 186), provides that "a decree or order of injunction shall have the effect of a writ of injunction, and no writ of injunction shall issue unless specially directed." That statute has not been before this court for consideration, but perhaps is tacitly recognized by rule 210 of the court of chancery, beginning: "The writ of injunction, when ordered," &c.; and the view expressed by the late Vice-Chancellor Bentley, in *Forstmann & Hoffman Co.* v. *United Front Committee, &c., 99 N. J. Eq. 696, 700,* was that the order itself, when served, operated as an injunction.

Accepting that view for present purposes, we have before us an order which is entitled on its face as an "order and injunction;" which is so described in the later order now under appeal, and which probably should be regarded as in effect a mandatory injunction to deliver the stock. It is not a preventive injunction anticipatory of some threatened wrong. It would have been such if, for example, it had forbidden the trust company to do anything with the stock until further order of the court: but what it does is to require positive action involving a change of existing conditions, and this, as will be seen, is vitally important to the present appeal.

The injunctive order was appealed, as has been stated, and the trust company did nothing by way of obeying it. The original appeal not having been decided at the May, 1930, term of this court, complainants applied to the court of chancery to hold the trust company in contempt for not delivering the stock. The vice-chancellor did not so adjudge, but took the middle course of ordering a bond in $10,000 conditions to perform the decree if affirmed, and in default of giving such bond, then to deliver the stock as directed by the "order and injunction" and notwithstanding the appeal.

In dealing with this subject of appeal in injunction cases, one naturally turns first to the celebrated case of *Pennsylvania Railroad Co.* v. *National Docks, &c., Railway Co., 54 N. J. Eq. 647,* in this court. In that case there was an injunctive order, preventive in form but mandatory in effect which, if obeyed, meant that appellants must permit the

complainant below to construct an underpass across appellant's right of way, interrupting the operation of its railroad while this work in progress. This order appellant, after appealing it, disobeyed, was adjudged in contempt, and appealed from the contempt order. Chief-Justice Beasley said, at page 653: "The very essence of the remedy by appeal is to protect [printed 'prevent' but this is an obvious error in copying] for the time being, the appellant from this execution of the existing decree; and this being so, it is indisputable that when the statute grants the right of appeal, it grants such protection," and in conclusion he said, "the opinion of this court is that the decree in question lost for the time all its force, and that the appellant could not fall into contempt by resisting its execution," and he significantly added, "it is likewise the opinion of this court that an appeal in all cases will have that effect given to it which shall be necessary to preserve the subject to which the appellate procedure relates, in such a condition as will enable this court to render an efficacious decree in the premises. That for this purpose an injunction decree will be suspended or continued, or a previous injunction revived, by the act of filing an appeal whenever such construction shall be necessary for the end just stated."

It was intimated by the late Chancellor Magie, in *Laird* v. *Atlantic Coast Sanitary Co., 73 N. J. Eq. 5,* that in *Morton* v. *Beach, 56 N. J. Eq. 791,* the holding of this court in the *National Docks Case* was qualified to some extent: but an examination of the report in *Morton* v. *Beach* will show that we merely held that an order for the taking of an account was no substantial interference with the subject-matter and that an appeal would not stay the accounting. The late Mr. Justice Garrison said, at page 792: "[*The National Docks Case*] indubitably decided that the mere act of the appellant, in placing before this court the question whether the threatened destruction of its property was justifiable, preserved the property from destruction while the question was under consideration by this court. The opinion further

intimated in no uncertain terms that this must be the effect of every appeal if the preservation of the subject of litigation be necessary to the remedy sought in this court. Neither this case nor the principle that it illustrates has any application to an appeal from a decree directing the taking of an account where there is no property to be preserved and no destruction to be averted."

It is unnecessary to notice with particularity various decisions in the court of chancery bearing on this subject, as for example, *Delaware, Lackawanna and Western Railroad Co.* v. *Breckenridge, 55 N. J. Eq. 159; Johnson & Johnson* v. *Seabury & Johnson, 69 N. J. Eq. 696; Laird* v. *Atlantic Coast Sanitary Co., supra; Ashby* v. *Yetter, 78 N. J. Eq. 173,* in which Chancellor Walker reviews the cases at some length; and *Cape May Yacht Club* v. *Cape May Yacht and Country Club, 82 N. J. Eq. 204.* Most of them relate in large measure to the effect of sections 112 and 113 of the revised Chancery act of 1902. *P. L. p. 546; Comp. Stat. pp. 451, 452.* So far as they run counter to our own decisions, they are of course not binding on us.

In the recent case of *Roseberg* v. *American Hotel and Garden Co., 95 N. J. Eq. 640,* this court again considered the matter. Three successive appeals were involved. The first brought up an injunction against disturbing complainant in the occupancy of certain premises. The restraint was affirmed. The second was from the refusal of the court of chancery to dissolve the injunction pending the appeal because of alleged new conditions. This was affirmed, but on the express ground, not taken by the court below, that the effect of the appeal was "to prevent the order from being so dealt with subsequently by the court of chancery as to destroy or impair the subject-matter of the appeal," citing and quoting from the *National Docks Case,* and pointing out that a dissolution of the injunction could be had in chancery only by first dismissing the appeal. The third appeal was from an adjudication of contempt of the injunction by bringing an ejectment suit pending the appeal. This was likewise

affirmed, the present chief-justice remarking in the opinion that "the fact that the injunction order had been appealed from did not suspend its operation pending the appeal. So long as it remains unmodified or unreversed, it is binding upon the parties, and a violation of any of its provisions renders the violator subject to punishment as a contemnor."

The fundamental thought underlying our decisions on this subject is the preservation of a *status quo* on which the determination of the appeal may act effectively. So, where for example, there is a preventive injunction, which in the nature of things contemplates the continuance of an existing status, that injunction stands although appealed, and the court of chancery is by the very appeal ousted of jurisdiction to interfere with it while the appeal persists. On the contrary, where the decretal order or injunction, by whatever name known, calls for an alteration in the status of the parties as previously existing, and an appeal is taken, the effect of the appeal is to suspend the operation of such order or injunction until, and subject to, the determination of the appeal. This would obviously be the result of appealing from a decree of specific performance; and between such a decree and that affirmed by us in our former decision in this cause, there is no essential difference.

As a corollary from what has been noted above, it follows that an injunction forbidding disturbance of an existing status must be obeyed pending appeal, and the court of chancery may and should enforce it but cannot modify or annul it; and that an injunction or order requiring a change in the existing status is *ipso facto* suspended by appeal, need not be performed while appeal is pending, and contempt may not be predicated on failure to perform it in that event.

Illustrative of these views is the recent decision of Vice-Chancellor Fielder in *Schreiber* v. *Drosness, 100 N. J. Eq. 123,* a suit to enforce a restrictive covenant by injunction forbidding the continuance of a going business. The injunction was awarded and there was an appeal. Then the complainants, invoking chancery rule 160, obtained an order

for issuance of the writ of injunction notwithstanding the appeal. Defendants moved for a vacation of the order without success, and failing to have it vacated proceeded with their business in disobedience of the injunction and defended against an order to show cause why they should not be adjudged in contempt. The vice-chancellor held, and properly, that the question to be determined was whether the injunction, if enforced, would destroy or impair the subject-matter of the appeal, and examining that question determined, with equal propriety, that it would. Following this reasoning to its logical conclusion, he adjudged that there was no contempt in disobeying the injunction, and discharged the orders to show cause.

In the case at bar the order requiring security, or in the alternative the delivery of the stock, made after the appeal was perfected, was beyond the jurisdiction of the court of chancery and consequently erroneous, for the reasons we have stated. It will therefore be reversed.

It is true that in view of our affirmance of the original order to deliver the stock, the question whether the second order was justified becomes in a sense academic; but the subject is of paramount importance, and that fact justifies, if indeed it does not require, the foregoing expression of our views.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 15.