TOMASSO BROTHERS, INC. v. OCTOBER
TWENTY-FOUR, INC., ET AL.
(14642)

PETERS, C. J., CALLAHAN, BORDEN, NORCOTT and KATZ, Js.

Argued May 31—decision released August 9, 1994

*Peter J. Zagorsky,* for the appellants (defendants).

*John R. Fornaciari,* pro hac vice, with whom were *James H. Throwe* and, on the brief, *Stephen J. Anderson* and *Carl R. Ficks, Jr.,* for the appellee (plaintiff).

BORDEN, J. The principal issue in this appeal is whether a permanent prohibitory injunction is automatically stayed by the filing of an appeal by the enjoined party. This case returns to us after the trial court, on

remand, determined that a permanent prohibitory injunction should issue in order to protect the plaintiff's use of its property from a nuisance arising from the defendants' use of their adjoining property.

The plaintiff, Tomasso Brothers, Inc., brought an action against the defendants, October Twenty-Four, Inc. (October Twenty-Four), and A. Aiudi and Sons (Aiudi),[1] alleging that the defendants' operation of a quarry on property abutting that of the plaintiff violated applicable zoning regulations and constituted a nuisance. The trial court, *O'Neill, J.,* issued an injunction that prohibited the defendants from continuing to operate the quarry. The defendants appealed from the judgment granting the injunction. While the appeal was pending in this court, the plaintiff modified its development plans for the property. Although we ruled on some of the issues raised on appeal; see footnote 3; we remanded the case to the trial court to determine the continued propriety of the injunction in light of the plaintiff's modified plans. *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.,* 221 Conn. 194, 203, 602 A.2d 1011 (1992) *(Tomasso I).*

After additional hearings, the same trial court again enjoined the defendants from further quarrying. The defendants appealed[2] from this judgment, claiming that the trial court had improperly: (1) found that the defendants' activities constituted a nuisance;[3] and (2) enjoined the defendants from further quarrying. The defendants continued to quarry while the appeal was

---

[1] The individual partners of A. Aiudi and Sons are officers and principal shareholders of October Twenty-Four, Inc.

[2] We transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[3] This claim exceeds the scope of our remand to the trial court and is not properly part of the current appeal. In *Tomasso I,* the defendants alleged that the trial court had not only improperly ordered the injunction, but also had improperly: (1) found that the defendants' activity constituted a nui-

pending, however, and consequently the trial court held them in contempt. The defendants then amended their appeal by adding claims that the trial court had improperly: (1) concluded that Practice Book § 4046 did not automatically stay the injunctive order pending resolution of their appeal; and (2) found the defendants in contempt. We affirm the judgments of the trial court.

The trial court's memoranda of decision reveal the following facts. October Twenty-Four owns a thirty-eight acre parcel of land in Plainville, on which it permits Aiudi to drill, blast, excavate and remove trap rock for use in Aiudi's concrete business. This parcel of land abuts a twenty-eight acre parcel owned by the plaintiff. The plaintiff's property is zoned for a technology park and October Twenty-Four's property is zoned for residential use.

---

sance; and (2) excluded certain evidence. We affirmed the trial court's judgment on the nuisance and the evidentiary issues. *Tomasso I,* supra, 221 Conn. 194.

Regarding the injunction, we stated: "Without limiting the scope of the trial court's authority upon remand, we deem it likely that the trial court will want to consider evidence about the impact of the defendants' quarry operations on the plaintiff's new plan of development. Taking into account whatever circumstances it deems relevant, the trial court should then exercise its equitable discretion to reexamine the plaintiff's claim for injunctive relief and the obligations that an injunctive order imposes upon the defendants." Id., 203.

Although we did not intend to "[limit] the scope of the trial court's authority upon remand"; id.; we also did not intend to reopen the question of nuisance. In the context of the entire opinion, it is clear that the remand was limited to the equitable question of the issuance of the injunction. We disposed of the nuisance issue in part I of *Tomasso I.* The defendants may not resurrect issues that were resolved in the previous appeal. *Dacy* v. *Connecticut Bar Assn.,* 184 Conn. 21, 441 A.2d 49 (1981).

Moreover, even if reexamination of the nuisance issue were appropriate, we would conclude that the trial court's determinations regarding nuisance were not clearly erroneous. See *Dalia* v. *Lawrence,* 226 Conn. 51, 71–72, 627 A.2d 392 (1993). This deference to the trial court is especially warranted in this case, in which the same trial court, *O'Neill, J.,* heard both stages of the trial level proceedings, and therefore was undoubtedly aware of the evidence introduced at both stages.

The plaintiff had originally intended to develop its property into an office park with a 100 room hotel. In its original memorandum of decision, the trial court found that the quarrying activity on October Twenty-Four's property constituted a common law nuisance and adversely affected the plaintiff's plans for development. The trial court therefore enjoined the defendants from further quarrying.[4]

While the appeal from that first judgment was pending, the plaintiff modified its development plan. Specifically, the plaintiff deleted the building intended to be used solely as a hotel and substituted a building intended to be used only partly for residential purposes. The planned substitute building is a four story office conference center with forty small rooms for overnight accommodations, in addition to training rooms, conference rooms and food service with dining facilities. The substitute building would be located approximately 130 feet closer to October Twenty-Four's property line than the hotel would have been, and approximately fifty feet closer than the hotel to the site of the blasting operation.

In *Tomasso I,* we determined that these changes in the plaintiff's plan had caused the defendants' appeal from the injunctive order to become moot. Rather than

---

[4] The order of December 21, 1990, stated: "The defendants shall cease all quarrying activity including but not limited to all blasting and rock removal from [October Twenty-Four's] property within ten (10) days after the plaintiff's plan of development for a technology park development is approved by the appropriate authority or authorities of the town of Plainville. This order is not applicable to any development plan approved for only industrial or light industrial development. This order shall not be stayed from the date of such municipal approval for any reason including any possible appeals from such municipal authorization, whether successful or not."

The trial court did not base the injunction upon, and expressly declined to address, the purported illegality of the defendants' use of the property. In deciding the nuisance issue in *Tomasso I,* supra, 221 Conn. 197–98, however, we held the defendants to the uncontroverted allegation that the use of the property was illegal.

reviewing the trial court's assessment of an outdated development plan, we remanded the case to the trial court to reexamine the equitable considerations relevant to the issuance of the injunction in light of the changed circumstances. See footnote 3.

In its memorandum of decision following the remand, the trial court found that, with respect to the proposed development of the property, the plaintiff had received approvals from certain municipal authorities[5] and that it had applied for the remaining necessary approvals. Furthermore, the court found that the plaintiff had reached agreements concerning the provision of electrical, telephone and natural gas utilities, and had made progress towards the provision of sewer and water utilities. The court also found that financing for the project would still be available if the defendants' quarrying operation was terminated. The court had previously found that halting the defendants' quarrying activity was necessary to permit the plaintiff to seek and secure financing and tenants.

The court further found that the defendants' quarrying activity was continuing at about the same frequency and intensity as it had before *Tomasso I,*[6] and that in view of the material available it could continue at that level for another seven or eight years. The court also found, however, that the defendants had taken measures to reduce the noise. Specifically, it found that the machine that had been used to break large rocks had been removed and alternative methods were being used to break rocks on the site. The trucks used to transport rocks had been lined with steel and rubber belts, and sand had been placed in their beds. Further, the freestanding compressors had been removed from

[5] Currently on appeal. *October Twenty-Four, Inc.* v. *Planning & Zoning Commission,* Appellate Court, Docket No. 12655, argued April 25, 1994.

[6] In 1989, the defendants removed about 180,000 tons of rock, generating about 18,000 truck trips past the plaintiff's property.

the property and a new hydraulic drill had replaced the old pneumatic drill. Moreover, the defendants proposed to the court additional steps that could further reduce the noise emanating from the quarry.

The trial court reviewed substantial evidence of the effect of the defendants' quarrying operation on the plaintiff's development plans. The court viewed the site and site plans, compared noise levels while quarrying activity was occurring with ambient noise levels, and made detailed findings of fact. The trial court concluded that the sound from the quarry remained "annoying and unacceptable to persons who would be expected to use the [substitute building] for meetings, conferences and meals." The court therefore reaffirmed its conclusion that the quarry constituted a nuisance to the plaintiff.

Regarding the injunction, the court found that the plaintiff was irreparably harmed by the nuisance and that it had no adequate remedy at law. After hearing evidence concerning the effect that closing the quarry would have on Aiudi's business, the court "balance[d] the harms and benefits to all the parties." The court concluded that "the equities are overwhelmingly in favor of the plaintiff" and issued an injunction virtually identical to the injunction issued in *Tomasso I*.[7] This appeal followed.

I

The defendants first claim that the trial court improperly granted the plaintiff injunctive relief. Specifically,

[7] The order of August 7, 1992, stated: "Defendants shall cease all quarrying activity including but not limited to all blasting and rock removal from the Corporation's property within ten (10) days after the plaintiff's plan of development for a technology park development is approved by the appropriate authority of the town of Plainville. This does not include filing of any plan or plans with the town clerk."

The relevant approval had been obtained by operation of law on March 20, 1992. See General Statutes § 8-7d. In addition, the Plainville authorities

the defendants contend that the trial court improperly: (1) concluded that the plaintiff was irreparably harmed and had no adequate remedy at law; (2) balanced the benefits to the plaintiff against the hardships to the defendants; and (3) exceeded its authority by issuing an unduly restrictive injunction. We disagree.

The defendant correctly states the law germane to the granting of injunctive relief. " 'A party seeking injunctive relief has the burden of proving irreparable harm and lack of an adequate remedy at law.' " *Berin* v. *Olson,* 183 Conn. 337, 340, 439 A.2d 357 (1981). The request for injunctive relief is addressed to the sound discretion of the trial court. *Walton* v. *New Hartford,* 223 Conn. 155, 165, 612 A.2d 1153 (1992). "In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction." *Moore* v. *Serafin,* 163 Conn. 1, 6, 301 A.2d 238 (1972). "The issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the trier." (Internal quotation marks omitted.) *Cummings* v. *Tripp,* 204 Conn. 67, 90, 527 A.2d 230 (1987). "[T]he court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion." *Walton* v. *New Hartford,* supra, 165.

The trial court in this case acted well within its discretion in determining that the plaintiff was irreparably injured and had no adequate remedy at law. The court determined that the plaintiff had progressed significantly towards accomplishing its development plans, and that its plans were legally and financially feasible. Indeed, the court heard testimony that the plaintiff's property was even more marketable with the

---

voted approval of the application on May 12, 1992. Thus, nothing further was needed to trigger the injunction.

proposed conference center than it had been with the proposed hotel. Furthermore, the court found that the noise emanating from the quarry was one of the major remaining obstacles to the plaintiff's project because the plaintiff needed to build the basic infrastructure before it could seriously market the project, and the undertaking of such expenditures could not be expected while the quarry remained in operation.

Continuing nuisances, such as the production of noise to the detriment of one's neighbor, have traditionally been considered suitable grounds for equitable relief. See, e.g., *Cummings* v. *Tripp,* supra, 204 Conn. 90; *Maykut* v. *Plasko,* 170 Conn. 310, 314, 365 A.2d 1114 (1976). This is true even if, as in the context of this commercial development, the losses are also measurable in pecuniary terms.[8] See *Berin* v. *Olson,* supra, 183 Conn. 342.

The court, moreover, acted within its discretion in balancing the hardships and determining the scope of the injunction. On the one hand, the court reasonably concluded that permitting the quarry to remain in operation would significantly harm the plaintiff's development efforts. On the other hand, testimony revealed that Aiudi could obtain trap rock elsewhere in the marketplace, that other concrete companies had done so without going out of business, and that Aiudi intended to do so when the Plainville quarry becomes exhausted. Therefore, the trial court did not abuse its discretion by issuing an injunction that demanded complete cessation of all quarrying activities.

## II

The defendants next claim that the trial court improperly: (1) concluded that Practice Book § 4046 did not

---

[8] In the trial underlying *Tomasso I,* the plaintiff's vice-president testified that forty million dollars would compensate the plaintiff for the loss of the ability to develop the property into the technology park.

automatically stay the injunctive order pending the appeal from the order; and (2) held the defendants in contempt for disobeying the order.[9] We disagree.

The following facts are necessary for the resolution of these claims. In issuing its injunctive order, the court stated that, although many of the plaintiff's various permits necessary for final approval of the plaintiff's project were subject to appeal, the injunctive order was not to be stayed pending those appeals. The court reasoned that the plaintiff had the right to attempt to develop its property and that its development plans were reasonable and should not be stymied by appeals of permit approvals. The court also stated, however, that its conclusion did not apply to possible stays under Practice Book § 4046,[10] which pertains to appeals from the injunctive order itself.

---

[9] The plaintiff claims that the judgment of contempt does not constitute a final judgment for purposes of appeal. Specifically, the plaintiff contends that the trial court's judgment is not final because it fixes only the fine schedule and not the amount of the fine itself. The plaintiff relies for authority on *Perry* v. *Perry,* 222 Conn. 799, 804, 611 A.2d 400 (1992), and *In re Dodson,* 214 Conn. 344, 361, 572 A.2d 328, cert. denied, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990). We disagree.

In *Bryant* v. *Bryant,* 228 Conn. 630, 636, 637 A.2d 1111 (1994), we concluded that a civil contempt finding based upon the determination of an arrearage under a dissolution decree is an appealable final order. We reasoned that such a finding so substantially resolves the rights and duties of the parties that further proceedings relating to the judgment of contempt could not affect them. Id. To the degree that *Perry* was inconsistent with this conclusion, it was overruled. *In re Dodson* involved a criminal contempt, implicating somewhat different policies, and it held that the judgment was not appealable until the trial court imposed the fine.

In this case, the trial court has already determined the fine. All that remains is the purely ministerial act of calculating the fine after the defendants begin to abide by the judgment. The judgment is therefore final for purposes of appeal.

[10] Practice Book § 4046 provides in relevant part: "[AUTOMATIC STAY OF EXECUTION]——IN GENERAL

"In all actions, *except where otherwise provided by statute or other law,* proceedings to enforce or carry out the judgment shall be automatically stayed until the time to take an appeal has expired; if an appeal is filed,

By its own terms, the injunction went into effect upon its issuance. See footnote 7. The defendants, however, immediately filed the current appeal from the judgment without moving in the trial court for an order staying the injunction pending the appeal's resolution. Moreover, the defendants continued their quarrying activity.

On August 20, 1992, the plaintiff moved the court for an order of "immediate enforcement of the . . . injunction." The court denied the motion, advising the plaintiff that the appropriate remedy was an order of contempt. In July, 1993, the plaintiff moved for a judgment of contempt against the defendants for violation of the injunction.[11] The defendants contended that the filing of the appeal had automatically stayed the injunctive order. The trial court concluded that the injunctive order had not been stayed by the filing of the appeal, and granted the plaintiff's motion for contempt. The court ordered the defendants to pay a fine of $100 per day from August 28, 1992, to December 14, 1992, $200 per day from December 15, 1992, to the date of the issuance of the contempt order, and $2000 per day thereafter if the defendants continued to maintain the quarrying operation.

such proceedings shall be stayed until the final determination of the cause; and, if the case goes to judgment on appeal, until ten days after the decision is announced; but if the judge who tried the case is of the opinion that an extension to appeal is sought or the appeal is taken only for delay or that the due administration of justice so requires that a judge may at any time, upon motion and hearing, order that the stay be terminated. This section shall not apply to actions concerning attorneys pursuant to chapter 2, to periodic alimony and support orders, as well as to custody or visitation orders in domestic relations matters brought pursuant to chapter 17, to criminal matters brought pursuant to chapter 22 through 30 or to juvenile matters brought pursuant to chapters 31 through 40 other than any transfer orders to the regular criminal docket. . . ." (Emphasis added.)

[11] In the time between the two motions, the plaintiff sought an order of contempt in a related case for violation of a preliminary injunction ordering the defendants to stop quarrying. See *Dornfried* v. *October Twenty-Four, Inc.*, 230 Conn. 622, 646 A.2d 772 (1994). In accordance with that preliminary injunction, the defendants stopped quarrying for a brief period.

## A

The defendants claim that Practice Book § 4046 automatically stayed the operation of the trial court's injunctive order pending the resolution of their appeal. Section 4046 provides: "In all actions, *except where otherwise provided by statute or other law,* proceedings to enforce or carry out the judgment shall be automatically stayed until the time to take an appeal has expired; if an appeal is filed, such proceedings shall be stayed until the final determination of the cause . . . ." (Emphasis added.) See footnote 10. Thus, the question is whether a permanent prohibitory injunction is among the exceptions contemplated by § 4046; that is, whether a permanent prohibitory injunction is an order of the trial court that is not stayed pending an appeal from it because such a lack of a stay is "otherwise provided by statute or other law." We have not found any authority in Connecticut that specifically addresses this question.

As a preliminary matter, it is necessary to distinguish between a prohibitory and a mandatory injunction. A prohibitory injunction is an order of the court restraining a party from the commission of an act. A mandatory injunction, on the other hand, is a court order commanding a party to perform an act. Black's Law Dictionary (6th Ed. 1990); H. McClintock, Principles of Equity (2d Ed. 1948) § 15, p. 32.[12]

The prevailing view under the case law of many jurisdictions was that a prohibitory injunction was not automatically stayed pending an appeal from the order granting the injunction, whereas a mandatory injunc-

---

[12] It is sometimes difficult in practice to distinguish between mandatory and prohibitory injunctions. If an injunction is of dual or mixed character, it is possible to treat different portions of the order differently. See annot., 93 A.L.R. 723 (1934).

tion was automatically stayed pending appeal. See, e.g., *Hovey* v. *McDonald,* 109 U.S. 150, 161, 3 S. Ct. 136, 27 L. Ed. 888 (1883); 42 Am. Jur. 2d 1156, Injunctions § 348 (1969); annot., 93 A.L.R. 710, 715 (1934). The primary purpose of these rules was to preserve the status quo during the pendency of the appeal. *Helbig* v. *Phillips,* 109 N.J. Eq. 546, 158 A. 441 (1932). Under this view, therefore, in the case of a prohibitory injunction, the enjoined party was prevented from doing irreparable harm to the party that successfully sought the injunction; in the case of a mandatory injunction, the enjoined party was not required to assume a burden until the equities had been conclusively established. Id.

A review of our early rules of practice indicates that, in the past, permanent prohibitory injunctions have not been stayed automatically. Under the rules set forth in the 1934 edition of the Practice Book,[13] the execution of a judgment was stayed pending an appeal "in

---

[13] Practice Book, 1934, § 366 provides: "STAY OF EXECUTION

"In all civil actions, execution shall be stayed for two weeks after final judgment; and if an appeal be filed, or a notice of appeal as provided in Sec. 368, then execution shall be stayed until the final determination of the cause; but if the judge trying the same is of the opinion that the appeal is taken only for delay, or that the due administration of justice requires it, he may order execution at any time upon motion and hearing.

"If a stay of execution has been ordered by a trial court and [the supreme court] shall, upon appeal, advise that no new trial be granted, or decide that there has been no error, any judge of the court which ordered the stay may release it by giving a written order to that effect to the clerk, who shall file it with the papers in said cause, and thereupon issue such execution.

"*Such stay applies to every judgment in a civil action providing for the recovery of damages or requiring the performance of an act.*" (Emphasis added.)

This section was the predecessor to § 4046 of the current Practice Book. See also Practice Book, 1922, § 17; Practice Book, 1908, § 16. The 1934 Practice Book was drafted shortly after the legislature enacted legislation purporting to grant authority to the courts to adopt rules of practice. Public Acts 1929, c. 301, §§ 12, 14; *Northeastern Gas Transmission Co.* v. *Benedict,* 139 Conn. 36, 39–40, 89 A.2d 379 (1952).

a civil action providing for the recovery of damages or requiring the performance of an act." Practice Book, 1934, § 366. A judgment "requiring the performance of an act" is, by definition, a mandatory injunction, not a prohibitory injunction. The exclusion of prohibitory injunctions from the Practice Book indicates that our early rules of practice were in accordance with the general rule that mandatory injunctions, but not prohibitory injunctions, were automatically stayed pending the resolution of an appeal.[14]

Our case law also suggests that the stay of a prohibitory injunction is not automatic. In *O'Neill* v. *Carolina Freight Carriers Corp.*, 156 Conn. 613, 244 A.2d 372 (1968), this court reviewed the trial court's issuance of a permanent prohibitory injunction. Earlier in the procedural history of the same case, however, we had denied review of the trial court's denial of a stay of the injunction pending appeal. *O'Neill* v. *Carolina Freight Carriers Corp.*, 155 Conn. 714, 229 A.2d 701 (1967). More recently, in *Connecticut Employees Union "Independent," Inc.* v. *Connecticut State Employees Assn., Inc.*, 183 Conn. 235, 439 A.2d 321 (1981), we had heard an appeal from, inter alia, the granting of a permanent prohibitory injunction. In deciding the appeal, we noted that the trial court had denied a motion for a stay of the injunction pending our final decision in the matter. Id., 243 n.12. These cases implicitly recognize that permanent prohibitory injunctions generally have not been considered to be automatically stayed pending appeal, because had they been, the enjoined party would not have perceived a need to move for a stay. Furthermore, in *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 192 Conn. 1, 7, 469 A.2d 778 (1984), we stated that "injunctions continue in effect pending appeal unless the trial court, upon application, orders their

---

[14] The reference to damages or the performance of an act was eliminated from the Practice Book in 1951. Practice Book, 1951, § 411.

stay." This statement is not dispositive, however, because it was dictum and it was predicated on a statute pertaining to mandatory injunctions.[15]

We reach a similar conclusion as to prohibitory injunctions by reasoning from the applicable General Statutes. General Statutes §§ 52-477 and 52-476 govern the stay of injunctions pending appeal, and although neither addresses our specific concern, neither statute provides for an automatic stay. Under both statutes, a party must apply for a stay and the trial court must make a determination whether to stay the judgment. Thus, it is unlikely that the legislature intended permanent prohibitory injunctions to be stayed automatically pending appeal.

In the case of mandatory injunctions, § 52-477[16] creates a presumption in favor of granting an application

---

[15] The defendants contend that *Cologne* v. *Westfarms Associates,* 197 Conn. 141, 142, 496 A.2d 476 (1985), provides an example of a party moving to lift a stay of a permanent prohibitory injunction, which would only have been necessary if the stay were automatic. After the court issued the injunction in *Cologne,* the plaintiffs, apparently uncertain whether the existing version of Practice Book § 4046 automatically stayed the injunction, filed a "motion for contempt and/or motion to vacate stay." The trial court granted the motion and subsequently held the defendants in contempt. The question of the stay was not, however, part of the appeal and the uncertainty was never resolved.

The defendants also contend that *Cott Beverage Corp.* v. *Canada Dry Ginger Ale, Inc.,* 21 Conn. Sup. 244, 154 A.2d 140 (1959), and *H.O. Canfield Co.* v. *United Construction Workers,* 134 Conn. 358, 362–63, 57 A.2d 624 (1948), hold that permanent prohibitory injunctions are stayed pending appeal. Although *Cott Beverage Corp.* states that the injunction in that case was stayed pending appeal pursuant to the rules of practice, it does not indicate whether the injunction was prohibitory or mandatory, thus providing us with little guidance. *H.O. Canfield Co.* pertains to the application for a continuance of a temporary injunction under the predecessor to General Statutes § 52-476. See discussion that follows. Therefore neither case supports the defendants' cause.

[16] General Statutes § 52-477 provides: "PERMANENT INJUNCTION; STAY PENDING APPEAL. When judgment has been rendered for a permanent injunction ordering either party to perform any act, the court, upon an application similar to that mentioned in section 52-476, shall stay the operation

to stay the mandatory injunction pending appeal.[17] This presumption reflects the burden imposed by a mandatory injunctive order, and the legislature's intention to maintain the status quo by not imposing the injunctive burden prematurely.[18] If it is necessary to apply for a stay of a mandatory injunction, then a fortiori it ought to be necessary to apply for a stay of a prohibitory injunction, because the reason to stay a mandatory injunction, namely, to save a party from assuming undue burdens pending appeal, is stronger than the reason to stay a prohibitory injunction, which is simply to preserve the previously existing rights and obligations of the parties pending the appeal's resolution. These

of such injunction until a final decision in the court having jurisdiction, unless the court is of the opinion that great and irreparable injury will be done by such stay or that such application was made only for delay and not in good faith."

This statute, in various forms, has been in existence for many years. See General Statutes (1949 Rev.) § 8213; General Statutes (1930 Rev.) § 5904; General Statutes (1918 Rev.) § 6046; Public Acts 1884, c. 24.

[17] The defendants argue that this statute is superfluous and inconsistent with our rules of practice. Relying on Professor Stephenson's treatise on civil procedure; 2 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1971) § 269, p. 1113; they contend that under General Statutes § 52-477 the injunction may be stayed only upon application, whereas under the rules of practice the injunction is stayed automatically. Stephenson's treatise, however, was written before the January, 1985 amendment to the Practice Book added the clause "except where otherwise provided by statute or other law" to the provision governing stays pending appeal. See footnote 10. This amendment arguably resolved any inconsistency between the Practice Book and the General Statutes. See *Cologne* v. *Westfarms Associates,* 197 Conn. 141, 143 n.4, 496 A.2d 476 (1985); see also *Barber* v. *Barber,* 15 Conn. Sup. 271, 272 (1948) (holding that predecessor to General Statutes § 52-477 and preamendment predecessor to Practice Book § 4046 are not inconsistent).

[18] The legislature's decision to require an application to stay a mandatory injunction could arguably be read to imply that no application is necessary to stay a prohibitory injunction. We decline, however, to read such an implication into the statute. The plain language of General Statutes § 52-477 applies only to permanent mandatory injunctions and we see no reason why it should affect other provisions relating to other kinds of injunctions.

are the policies that underlie the common law distinction between stays of mandatory and prohibitory injunctions pending appeal. See *Helbig* v. *Phillips,* supra, 109 N.J. Eq. 546.

In the context of temporary injunctions, § 52-476[19] employs the opposite presumption in order to advance similar policies. Section 52-476 provides that if a temporary injunction was initially granted and later dissolved after a final hearing on the merits, and either party intends to appeal, there is a presumption in favor of granting an application to *continue* the temporary injunction pending appeal. Thus, the statute reflects the importance placed by the legislature on maintaining the status quo pending appeal. See *Stamford* v. *Kovac,* 228 Conn. 95, 101, 634 A.2d 897 (1993); *H.O. Canfield Co.* v. *United Construction Workers,* 134 Conn. 358, 362–63, 57 A.2d 624 (1948) (discussing predecessor to General Statutes § 52-476); *Olcott* v. *Pendleton,* 128 Conn. 292, 22 A.2d 633 (1941) (same).

Furthermore, practical considerations lead us to conclude that in the case of both prohibitory and mandatory injunctions, the enjoined party ought to be required to request the trial court to rule on a stay pending appeal, and that absent such a request, the injunction ought to be considered in effect. Although, as we have

---

[19] General Statutes § 52-476 provides: "CONTINUANCE PENDING APPEAL. When a temporary injunction has been granted and upon final hearing judgment has been rendered adverse to its continuance, either party may apply to the court rendering the judgment, representing that he intends to appeal the case to the court having jurisdiction and praying that the temporary injunction may be continued until the final decision therein. Unless the court is of the opinion that great and irreparable injury will be done by the further continuance of the injunction, or that the application was made only for delay and not in good faith, the court shall continue the injunction until a final decision is rendered in the court having jurisdiction."

This statute has also been in existence for many years. See General Statutes (1949 Rev.) § 8212; General Statutes (1930 Rev.) § 5903; General Statutes (1918 Rev.) § 6045; Public Acts 1884, c. 24.

noted, different portions of the same injunction may be treated differently for some purposes; see footnote 12; the fact that the same injunction may have both prohibitory and mandatory aspects counsels that both aspects be treated similarly for purposes of whether the injunction is automatically stayed pending appeal.

We therefore conclude that the permanent prohibitory injunction in this case was not automatically stayed pending appeal. The trial court therefore acted within its authority when it held the defendants in contempt of court for failing to obey the injunction, despite the pendency of the defendants' appeal.[20]

## B

The defendants also claim that the trial court improperly held them in contempt for disobeying the injunctive order because the contempt finding was made in violation of their due process rights and lacked factual support. We disagree.

We first note that this appeal is from a finding of civil contempt and, therefore, "our review is technically limited to questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt." (Internal quotation marks omitted.) *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 731, 444 A.2d 196 (1982). "Although *Papa* recognizes that plenary review of civil contempt orders extends to some issues that are not truly jurisdictional, its emphasis on fundamental rights

---

[20] We note that if the defendants had wished to clarify this issue without risking the judgment of contempt, they could have filed a motion to stay the injunction. They chose instead to continue to quarry and risk vindication on appeal. We have held, however, that a party has a duty to obey a court order even if the order is later held to have been unwarranted. *Mulholland* v. *Mulholland,* 229 Conn. 643, 649, 643 A.2d 246 (1994); *Cologne* v. *Westfarms Associates,* 197 Conn. 141, 147, 496 A.2d 476 (1985).

underscores the proposition that the grounds for any appeal from a contempt order are more restricted than would be the case in an ordinary plenary appeal from a civil judgment." *Commissioner* v. *Youth Challenge of Greater Hartford, Inc.,* 219 Conn. 657, 666, 594 A.2d 958 (1991); *Dunham* v. *Dunham,* 217 Conn. 24, 29–30, 584 A.2d 445 (1991).

Recognizing the limited appellate review of the contempt order, the defendants first cast their arguments in terms of constitutional due process. Specifically, they contend that they were not sufficiently advised of the charges against them because the plaintiff's motion for contempt only charged them with contempt from July 1, 1993,[21] but the trial court found the defendants in contempt from August 28, 1992.

Although it is undisputed that a civil contemnor has a due process right to be advised of the charges against him; *Bryant* v. *Bryant,* 228 Conn. 630, 637, 637 A.2d 1111 (1994); we conclude that the defendants' rights were adequately protected in this case. First, there can be no doubt that the defendants were on notice that they were enjoined from further quarrying when the injunction was issued in August, 1992. Second, the issues, including the relevant dates, were fully aired in the hearings on the plaintiff's motion for immediate enforcement and the plaintiff's motion for contempt. Indeed, in the first hearing, the trial court warned the defendants by apprising the plaintiff: "If I've got an injunction outstanding and there is no stay and you come in for contempt, I'm going to give you contempt." Third, the trial court's memorandum of the decision on the plaintiff's motion for immediate enforcement, which it issued on December 14, 1992, indicated that a stay of the injunctive order was unlikely and that

---

[21] We note that the plaintiff's motion actually charges contempt from "at least" July 1, 1993.

contempt was an appropriate remedy for the plaintiff. The defendants thus had adequate notice that they were at risk of being held in contempt if they continued to quarry. The time increments in the order of contempt reflect the development of the case.

The defendants also contend that the contempt order was not authorized by law because it lacks factual support that the defendants continued to quarry. This claim fails in light of the defendants' stipulation, in the contempt hearing, that they were still quarrying: "We do stipulate that my clients' activities are ongoing. They were ongoing when the motion for immediate enforcement was heard before the court on September 8th 1992. I think everybody was fully aware of that." The trial court's factual findings and ultimate conclusion are adequately supported by the record and are not clearly erroneous. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The judgment is affirmed.

In this opinion the other justices concurred.