[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR INJUNCTION
The defendants, North Stonington Development Associates, LLC (NSDA) and John Zaccaro, Sr. (Zaccaro), have filed a Verified Motion for Injunction. They claim they are entitled to the entry of an injunction compelling plaintiff Charles Gattoni (Gattoni) to return certain real property which they claim was wrongfully converted by Gattoni from NSDA.
The parties' rights, obligations and duties with respect to NSDA are set forth in a validly executed operating agreement dated July 18, 1995. A copy of the operating agreement is attached to the defendant's brief, Exhibit C, and incorporated herein by reference.
Pursuant to the operating agreement the initial "members" of NSDA were Zaccaro and AC Realty Trust, an entity of which Gattoni is a trustee. Zaccaro was originally the majority (51 %) member while AC Realty Trust was a minority (49%) member. Nowhere does the agreement state that they were 50/50 shareholders as claimed by Gattoni.
According to the operating agreement, Zaccaro and AC Realty Trust were also initially elected as "managers" of NSDA. Gattoni acknowledged that the operating agreement says nothing about "managing members" of NSDA. Gattoni knew that, pursuant to the operating agreement, any manager of NSDA may be removed at any time, with or without cause, by the affirmative vote or written consent of members holding a majority interest in NSDA.
Pursuant to the operating agreement, an affirmative vote or written consent of members holding a majority interest in NSDA is required for the managers to jointly sell or otherwise dispose of all or substantially all of NSDA's assets. An affirmative vote or written consent of members holding a majority interest in NSDA is also required to approve the sale, exchange or other disposition of all of NSDA's assets. Gattoni understood these provisions of the operating agreement.
The Court finds the following facts to be true.
On August 28, 1996, Zaccaro, the majority member of NSDA, spoke to Gattoni and told Gattoni that he was upset with what CT Page 2697 Gattoni had been doing in relation to the project. Zaccaro further told Gattoni that Gattoni was out as a manager of NSDA. On or about September 5, 1996, Zaccaro informed Gattoni that his interest in NSDA was being significantly reduced.
On September 9, 1996, Gattoni executed a quitclaim deed purporting to transfer the property from NSDA (an entity in which AC Realty Trust, but not Gattoni, personally owned a minority membership interest) to NSA, Inc. (an entity in which Gattoni personally owned 50% of the shares). A copy of the September 9, 1996, quitclaim deed is attached to defendant's brief as Exhibit D.
The property purportedly transferred by the September 9, 1996, quitclaim deed constituted all or substantially all of the assets of NSDA. Gattoni claims to have executed the deed out of fear that Zaccaro, who had the legitimate power as a majority member of NSDA, to approve the sale or disposition of NSDA's assets, would move the property to another entity.
Gattoni purported to execute the September 9, 1996, deed as a "managing member" of NSDA, notwithstanding the fact that the operating agreement says nothing about "managing members" of NSDA. Gattoni also used an incorrect address for the grantee, NSA, Inc., on the quitclaim deed and waited eight months before formally filing the deed. In addition, no conveyance tax was collected in connection with the September 9, 1996, transfer.
Gattoni admitted that he did not have the affirmative vote or written consent of members holding a majority interest in NSDA to approve the September 9, 1996, transfer of all or substantially all of NSDA's assets. Gattoni also admitted that he did not consult or confer with Zaccaro or Zaccaro's attorneys or accountants prior to executing the September 9, 1996, quitclaim deed.
In purporting to transfer all or substantially all of the assets of NSDA, Gattoni procured no reasonable value in return for said transferred assets. At most, Gattoni, may have paid one dollar to himself as consideration for the transfer. He admitted, however, that he failed in his duty to defendants to account for receiving this money on NSDA's behalf.
PROCEDURAL BACKGROUND
CT Page 2698
On or about February, 1997, Gattoni commenced an action in New Haven Superior Court seeking, inter alia, a dissolution of NSDA. Gattoni also filed a lis pendens on the land records against the real property owned by NSDA. On or about March 3, 1997, the Court (Hodgson, J.) discharged said lis pendens and held, inter alia, that Gattoni did not have a personal interest in said real property. A copy of Judge Hodgson's decision (Exhibit E) is attached to the defendant's brief.
On or about May 23, 1997, Gattoni commenced the above-captioned action and again filed a lis pendens on the land records. On October 29, 1997, this Court (Purtill, J.) discharged that most recent lis pendens filed on the land records by Gattoni after hearing Gattoni's evidence only and before the defendants put on any evidence.
An initial hearing on Defendants' Verified Motion for Injunction was held on January 9, 1998. At that hearing, an investment banker, Randy Naylor, testified that the investment banking community will not lend money to the project unless and until title to the property is returned to NSDA. Zaccaro, who also testified, confirmed that he alone paid the purchase prices for the property, that Gattoni contributed no money to the acquisition of the property and that Gattoni was never given permission for the September 9, 1996, transfer. Zaccaro's son, John Zaccaro, Jr., testified that he continued the process of acquiring approvals for the project after Gattoni was fired on August 28, 1996.
There was also evidence at the January 9, 1998, hearing that the zoning approvals will lapse two years after issuance. There was also evidence that newly enacted zoning restrictions would limit development to a 200-room hotel. The parties currently have approval of the town to construct a 400-room facility.
DISCUSSION
The Court finds that Gattoni's conversion of NSDA's property on September 9, 1996, was clearly without authority. The defendants, however, have no adequate remedy at law to address this inequity and, without an injunction ordering the plaintiffs to return the property to NSDA, will continue to suffer irreparable harm. The defendants have requested that an injunction be granted ordering the immediate return of the wrongfully converted property. CT Page 2699
The Court has found that Gattoni's transfer of NSDA's property to NSA, Inc. on September 9, 1996, was without authority. Gattoni had no authority to execute the quitclaim deed. As a minority member of NSDA, Gattoni's attempt to dispose of all or substantially all of NSDA's assets without Zaccaro's approval was in direct violation of the operating agreement, an agreement which he signed and fully understood. Gattoni admits that his actions were taken unilaterally and that he never consulted Zaccaro or Zaccaro's attorneys or accountants. Gattoni admits that in signing the deed he acted out of fear that Zaccaro (who had the legitimate power to approve the sale or disposition of NSDA's assets) would move such assets to another entity.
In return for transferring all or substantially all of the assets of NSDA, which were valued in the hundreds of thousands of dollars, Gattoni procured no reasonable benefit for NSDA. at most, Gattoni received one dollar on NSDA's behalf. This "consideration," however, was never revealed to the defendants. Gattoni admits he failed to fulfill his duty as a manager of NSDA to account for funds received.
Gattoni signed the quitclaim deed as a "managing member" of NSDA. No such designation exists in the operating agreement. In addition, Gattoni failed to record the deed in the town's land records until May 27, 1997, over eight months after its execution. Further, the deed fails to recite the proper address of the grantee, NSA, Inc., at the time of execution. Finally, no conveyance tax was collected in connection with the transfer. In short, it is crystal clear that Gattoni's conversion of all or substantially all of NSDA's assets on September 9, 1996, was without authority.
This conclusion is supported by the March 13, 1997, Memorandum of Decision of the Court (Hodgson, J.) wherein it was determined that Zaccaro, not Gattoni, had the power to control NSDA's transactions:
 [I]n the Operating Agreement of NSDA, LLC, the plaintiff, who had no funds to pursue development of the land, clearly obtained only a 49% interest, and Zaccaro obtained a controlling 51% interest. Such an interest validly entitles Zaccaro to a dominant vote in transactions by the entity, as provided in the Operating Agreement. . . . The plaintiff did not deny signing the Operating Agreement on July 18, 1995. The CT Page 2700 plaintiff thus agreed that Zaccaro would, in essence, have a controlling interest.
The Court therefore rules that the September 9, 1996, transfer was without authority and the defendants are entitled to an appropriate remedy.
The defendants claim that the appropriate relief is for the court to order an injunction requiring that the property be returned forthwith to NSDA.
The entry of injunctive relief is within the Court's broad discretion. Advest. Inc. v. Wachtel, 235 Conn. 559, 563,668 A.2d 367 (1995). A party is entitled to injunctive relief when that party can show the lack of an adequate remedy at law and irreparable harm. See Advest, 235 Conn. At 562-63; Walton v. NewHartford, 223 Conn. 155, 165, 612 A.2d 1153 (1992).
Courts of equity have inherent authority to intervene by injunction to protect property rights where necessary and no adequate remedy at law is available. Van Tassel v. Spring PerchCo., 113 Conn. 636, 646, 155 A.2d 832 (1931). If a party's wrongful actions "pose a threat to some unique property interest, so that the injury will be irreparable and damages will not compensate for the loss of that property, the court will fee free to issue an injunction inasmuch as there is no adequate legal remedy." 11 Wright Miller Federal "Practice and Procedure § 2944 at 399 (emphasis added). See Raph v. Vogeler,45 Conn. App. 56, 64, 695 A.2d 1066, app. denied, 241 Conn. 920,696 A.2d 342 (1997).
The Connecticut Supreme Court has recognized that "each parcel of real property is in some way unique." French v.Clinton, 215 Conn. 197, 200, 575 A.2d 686 (1990). It has thus enjoined activity which obstructs the commercial development of real property. See, e.g., Tomasso Bros, Inc. v. October Twenty-FourInc., 230 Conn. 641, 648-49, 646 A.2d 133 (1994). See alsoRaph, 45 Conn. App. at 64 (property owners lack adequate remedy at law where no monetary value can be placed on loss of free access to and use of their land).
In Tomasso Bros., the defendant was engaging in activities (quarrying) that hindered the plaintiff's plans to develop its real property into a hotel and convention center. In enjoining the quarrying, the Supreme Court recognized the significant CT Page 2701 progress the plaintiff had made towards accomplishing its development plans. It was reasonable to conclude, wrote the Court, that to allow the defendant's actions to continue unabated "would significantly harm the plaintiff's development efforts."Id., 230 Conn. at 649.
Like the land in Tomasso Bros., the real property at issue here is unique; it is located adjacent to the Mashantucket Pequot reservation and casino and is thus especially suitable for commercial development. As in Tomasso Bros., however, Gattoni's conversion of this unique property from NSDA has interrupted the defendants' efforts to develop the land into a premiere hotel and conference center. Specifically, no one in the investment banking community will lend money to the project unless and until title to the property is in the name of NSDA. Immediate injunctive relief is thus necessary. The fact that Gattoni's actions are a complete bar to development, as opposed to a mere hinderance [hindrance] (Tomasso Bros.), is further reason why injunctive relief must be entered forthwith.
The Court agrees that under the circumstances of this case, as described above, immediate relief is required.
A mandatory injunction, "a court order commanding a party to perform an act, " is well recognized in this jurisdiction as a proper form of injunctive relief. Tomasso Bros.,230 Conn. at 652; see also, 11 Charles Alan Wright Arthur R. Miller Federal Practice and Procedure § 2942 at 377 (1973 ed). The purpose of such an injunction is to restore the status quo. Stamford v.Kovac, 228 Conn. 95, 100-01, 634 A.2d 897 (1993). There are many instances where Connecticut courts have recognized the return of property wrongfully obtained as an appropriate type of mandatory injunctive relief. See, e.g., Favorite v. Miller, 176 Conn. 310,407 A.2d 974 (1978); Coria v. Libert, CV No. 97-400353 (Hodgson, J., July 9, 1997); Toffolon v. Frankel, CV No. 91-712357 (Sheldon, J., July 1, 1997). See also Cole v. Jerman,77 Conn. 374, 380-81, 59 A. 425 (1904) (upholding order compelling defendant to surrender to plaintiff possession of land and other injunctive relief); Buchanan Marine. Inc. v. McCormack Sand Co.,743 F. Sup. 139, 141-42 (E.D.N.Y. 1990) (holding, under Connecticut law, that where property clearly belongs to one party, another party's meddling with it may constitute a conversion for which complaining party may seek relief in the form of an injunction. CT Page 2702
The Court finds that here the property was not only unique but converted without authority. It agrees that a mandatory injunction ordering the property immediately returned to NSDA is the only way to ensure that the defendants' development plans will suffer no further harm.
The Court finds that in addition to the above, there are other unique aspects about this case which make a mandatory injunction ordering the property immediately returned to NSDA the defendants' only viable remedy. First, this case involves unique time restrictions. According to the town, all construction on the project must be completed within two years of the issuance of the zoning approvals. The longer the property remains out of NSDA's control, therefore, the clearer it is that the defendants are suffering irreparable harm.
Further, if the zoning approvals do lapse, it will be difficult, if not impossible, for the defendants to obtain further approval for the project. Thus, while the parties currently have approval of the town to construct a 400-room hotel, newly enacted zoning restrictions would limit development to a 200-room facility. This unique situation is further reason why an injunction allowing development of the property to commence forthwith must be ordered. Cf. Rhode Is. Hosp. TrustNat'l. Bank v. Trust, 25 Conn. App. 28, 40, 592 A.2d 417 (1991) (Foti, J. dissenting) (noting, in injunction context, that "property that is here today may be gone tomorrow.")
Finally, the investment banking community has made it clear that it will not lend money to the project unless and until title to the property is in the name of NSDA. In other words, the defendants' current inability to structure the financial portion of the project verifies that they are suffering irreparable harm and have no adequate remedy at law.
In conclusion, the Court finds that the defendants are entitled to an injunction restoring the property to NSDA immediately.
Accordingly, the Court enters an injunction ordering that the property be immediately returned to NSDA.
D. Michael Hurley, State Judge Referee CT Page 2703