[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs in this action are R. Joseph Pasquini and Roberta CT Page 4815 Pasquini, who purchased property at 12 Sachem Lane, Greenwich, on November 30, 2000, from the defendants, Joseph A. Wilkinson and Eileen M. Wilkinson. The defendants divided their property into two lots, sold their existing home at 12 Sachem Lane to the plaintiffs, and built a home on their other lot to the south, 8 Sachem Lane.
The plaintiffs filed an amended complaint dated April 26, 2001, which contains six counts. In the first count, the plaintiffs allege that they signed a contract on or about September 18, 2000, to purchase the defendants' home for $715,000; that after the contract signing, but before the closing, the defendants continued to construct a new home on their property at 8 Sachem Lane; that the defendants raised the elevation of their property by adding fill, dirt and soil; that, as a result, the amount of surface water coming onto the plaintiffs' property has increased and stands in the back yard as a pool for days at a time; that their basement floods and sump pumps run continually; that, as a further result of this conduct, the defendants breached their contract with the plaintiffs by selling property which had an unnatural flow and volume of water and too high a water table; that they disturbed the natural flow, dispersion and volume of surface water; and that the defendants violated section 2908.2 of the Connecticut State Building Code.[1]
In the second count, the plaintiffs allege that the defendants' activities breached the covenant of good faith and fair dealing which was implied in their contract with the defendants. The plaintiffs allege in the third count of their complaint that the defendants were negligent in adding fill, dirt and soil to their property and thus altering the natural flow, dispersion and volume of surface water from their land to the property belonging to the plaintiffs. In the fourth count of the amended complaint, the plaintiff's claim that the defendants' activities constituted a nuisance. The fifth and sixth counts claim that the defendants trespassed on the plaintiffs' property and failed to disclose information about their plans and activities, respectively. In addition to injunctive relief the plaintiffs also seek monetary damages.
The defendants denied the material allegations of the complaint and added a special defense that any harm suffered by the plaintiffs was due to the plaintiffs' own negligence. The case was tried to the court.
The evidence disclosed that in August of 2000 these parties had engaged in prior negotiations to purchase the subject premises. The plaintiffs thoroughly inspected the property themselves at that time and actually engaged two professionals to advise them about any existing water problems. Ken White, a certified building inspector, advised the plaintiffs in a written report dated August 25, 2000, that there were water problems in the basement of the home, and also in the back of their CT Page 4816 property, resulting from the grading of the defendants' property next door. In addition, the plaintiffs retained Jay Telesco, of Basement Systems Waterproofing, before signing the contract. He recommended installing a drain in the basement leading to a new type of submersible sump pump, The plaintiffs did not replace the existing sump pump. A contract was not executed at that time because the plaintiffs wanted the defendants to agree to re-grade their property to the satisfaction of the plaintiffs. The defendants refused to agree and that ended negotiations.[2]
In September of 2000, however, the plaintiffs' interest in the subject premises was rekindled and eventually a contract of sale was executed. In negotiating and executing this contract, the parties were both represented by counsel and it was also noted that the parties are astute and experienced in real estate mailers. The contract contained a so-called "as is" clause, in which the buyers, the plaintiffs, stated that they had inspected the premises and were satisfied in terms of pursuing the purchase.[3] The contract further provided that it constituted "the entire agreement between the parties" and that any oral statements or promises were of no effect. As a part of the contract, the defendants executed a "Residential Property Condition Disclosure Report" in which, in response to a question concerning the "basement-water/seepage/dampness?" they stated "only when sump pump fails, 6 X 4 area of carpet damp with torrential downpours, improvements with drainage currently being made on neighboring lot."
The defendants, as sellers, also executed a "Rider to Contract" which provided, among other things, that during their ownership "the basement had been free of flooding and excessive damage." This rider also provided that "Seller shall credit Purchasers with the sum of $1,500 at closing." The purpose of this credit was to acknowledge that there had been some water in the basement and that the money could be used by the plaintiffs to offset any costs that they might incur in remedying this condition. The total cost was estimated at $3,000, and the $1,500 reflected a 50-50 compromise. In other words, the plaintiffs knew there was dampness and water in the basement, calculated the cost of remedying the situation and negotiated a sharing or split of the cost. The evidence disclosed that the plaintiffs did not spend any money to correct the problem of water in the basement or the ponding in the backyard. Moreover, on the day of the closing, the plaintiffs made a final inspection and did not raise any problems at the closing with respect to these matters.
Based on this evidence, the court concludes that the plaintiffs entered into this transaction with their eyes wide open, so to speak, in that they knew there was a water problem on the property they were purchasing, both in the backyard and in the basement, but decided to go CT Page 4817 ahead with the purchase and, at the closing, they received a credit of $1,500 on the purchase price, as reimbursement for any remedial measures they undertook to perform. The defendants did not attempt to hide the fact that during periods of heavy rain, there would be flooding in the backyard of their former home, a condition which also affected other properties in the immediate area.[4] This flooding could last up to four or 50 days after a very heavy rain depending on the state of the ground at that time.
At their own new home and property at 8 Sachem Lane, the defendants, however, spent a good deal of money and installed a comprehensive drainage system and did not experience flooding in their backyard or basement.[5] If the plaintiffs are to solve their water problems, they are evidently going to have to spend some money and emulate the defendants' drainage program to the extent necessary and feasible.[6]
The court does not believe, however, that any such new measures or additions by the plaintiffs should be the financial responsibility of the defendants.
In terms of the plaintiffs' application for an injunction, it is well established that a party seeking a permanent injunction "has the burden of proving irreparable harm and lack of an adequate remedy at law. . . . The request for injunctive relief is addressed to the sound discretion of the trial court. . . . In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction. . . ." (Citations omitted; internal quotation marks omitted.) Tomasso Brothers, Inc. v.October Twenty-Four, Inc., 230 Conn. 641, 648, 646 A.2d 133 (1994). "A decision to grant or deny an injunction must be compatible with the equities in the case." Moore v. Serafin, 163 Conn. 1, 6, 301 A.2d 238
(1972).
Based on the facts of this case, it would not be equitable to order the defendants to change the grade of their property because the water problems on the plaintiffs' property can be either cured or greatly alleviated by the expenditure of money. The issue is whose money? The plaintiffs' property had water problems before the contract of sale was ever signed and the defendants were aware of these conditions. The plaintiffs, before they signed the contract to purchase the defendants' property, retained several experts to evaluate the problem and each had a solution. At the closing, the plaintiffs received a credit to be used to solve their water problems. Moreover, after hearing expert engineering testimony on behalf of both parties, the witnesses for the defendants were more credible when they testified that not only did the defendants not redirect or increase the flow of water on to the plaintiffs' property, the measures they took with respect to their own property will CT Page 4818 be of some benefit to the plaintiffs' property as well.
Thus, judgment enters in favor of the defendants on all the counts in the plaintiffs' complaint.
No costs are to be taxed to either party.
Dated at Stamford, Connecticut, this 11th day of April, 2002.
William B. Lewis, Judge T.R.