[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. Facts and Background
On or about November 6, 1997, plaintiffs Jacqueline Bradford and Henry Bradford filed an amended complaint alleging three causes of action against the defendants George Kimmerle and Lynn Kimmerle.
By way of background, plaintiffs allege they have owned property located at 10 Water Street, Stonington, Connecticut since 1970. Plaintiffs allege that their property includes both a parcel upon which a residence is constructed and a driveway parcel located on the opposite side of Water Street from the residence. The defendants own a property at 11 Water Street, Stonington, Connecticut, which is directly adjacent to the driveway parcel of property owned by the plaintiffs. Plaintiffs further allege that a garage straddles the property line between the properties of plaintiffs and defendants. The south half of the garage is owned by the plaintiffs and the north half is owned by the defendants. Moreover, the driveway to the south half of the garage is located on the plaintiffs' property whereas the driveway to the north side of the garage is located on the defendants' property.
Plaintiffs' first count alleges malicious erection of a fence pursuant to § 52-570 of the Connecticut General Statutes. Plaintiffs allege that defendants requested permission from the plaintiffs to relocate the garage and that plaintiffs denied defendants' request. Plaintiffs further allege that the defendants thereafter maliciously erected a fence with the CT Page 9436 intention to injure the plaintiffs and their tenants' enjoyment of the plaintiffs' property. Plaintiffs allege that the fence has impaired the value of plaintiffs' driveway and limits the line of site to the plaintiffs' driveway. Plaintiffs seek an injunction against the continuance of the fence pursuant to § 52-480 of the Connecticut General Statutes.
Plaintiffs' second count alleges that the erection of the fence so as to divide the common driveway constitutes a nuisance. In addition, plaintiffs allege that defendants' resurfacing of their driveway has changed the driveway's elevation and grading. Plaintiffs claim that the resurfacing of the driveway also constitutes a nuisance which has caused plaintiffs to incur damages.
Plaintiffs' third count alleges a claim for a prescriptive easement over the portion of the defendants' driveway which the plaintiffs and/or their tenants allegedly used for purposes of turning into and out of the driveway, traveling to the garage and entering and exiting their vehicles. Plaintiffs claim this alleged use was open and visible and was made under a claim of right. Plaintiffs allege that the construction of the fence and resurfacing of the driveway has interfered with the plaintiffs' and/or their tenants' use of the prescriptive easement.
The plaintiffs and defendants own two adjoining properties in the Borough of Stonington. Straddling the property line which divides the two properties is a four bay garage. The two bays to the south of the line are owned by the plaintiffs. The two bays to the north are owned by the defendants.
Until August of 1996, when the defendants erected their fence, a singular asphalt driveway led from the west side of the four-car garage to Water Street. The driveway lay in part on the defendants' land and in part of the plaintiffs' land. The property line through the common driveway was not a continuation of the straight line that divided the garage. Rather, the line ran first southwesterly and then westerly to the street.
Originally, the four-car garage and driveway were under single ownership. The defendants' predecessors in title, Dr. Melvin Chalfen and Mary Chalfen, purchased the house at 10 Water Street (now owned by the defendants) in 1964 and shortly thereafter in the same year purchased the entire driveway and four-car garage. (Defendants' Exhibits 23 and 24; Deposition CT Page 9437 Exhibit 4.) The garage and driveway were first divided in 1968 when the Chalfens sold the southern two bays of the garage and the southern portion of the driveway to Robert A. Doherty, d/b/a The Stonington Realty Company. (Plaintiffs' Exhibit 22.) The Chalfens retained ownership of the house and the northern portion of the garage and driveway until the time that they sold the properties to the defendants in May, 1996.
By way of warranty deed dated January 9, 1971 (Plaintiffs' Exhibit 1), and in connection with their acquisition of a two-unit house located across the street at 11 Water Street, the Bradfords took title to the southern two bays of the garage and the southern portion of the driveway. At the time the plaintiffs purchased their property in 1971, Mrs. Bradford, after meeting at the property with a real estate agent, believed the property line through the driveway to Water Street was a simple continuation of the straight line that divided the two halves of the garage (depicted as the red line on Plaintiffs' Exhibit 3).
The plaintiff claims that for over 25 years, from the time they purchased their property in 1971 until the time the Kimmerles erected their fence in 1996, the Bradfords and their tenants made use of the driveway south of the red line on Exhibit 3, including the claimed easement area shown in blue on Exhibit 3. (Hereinafter, the area of the claimed easement will be referred to as the "blue area" or the "disputed area".)
Some witnesses testified that the plaintiffs and their tenants used the blue area when entering and exiting the driveway and when entering and exiting their vehicles after parking them in the driveway. They claim this use was continuous, open, under a claim of right and occurred over a period in excess of 15 years. The plaintiffs claim they acquired a prescriptive easement over the blue area.
They claim that the fence erected by the defendants in 1996 interferes with the plaintiffs' easement by preventing the plaintiffs and their tenants from using the easement area when entering and exiting the driveway and entering and exiting their parked vehicles.
The plaintiffs Henry B. Bradford and Jacqueline A. Bradford purchased the property located at 10 Water Street, Stonington, Connecticut on January 9, 1971. (Plaintiffs' Exhibit 1.) Plaintiffs' property includes both a parcel upon which a CT Page 9438 residence is constructed and a driveway parcel located on the opposite side of Water Street from the residence. (Plaintiffs' Exhibit 1; Testimony of Jacqueline Bradford 5/4/99.) The defendants George Kimmerle and Lynn Kimmerle own a property at 11 Water Street, Stonington, Connecticut, which is directly adjacent to the driveway parcel of property owned by the plaintiffs. (Plaintiffs' Exhibit 2; Testimony of George Kimmerle 5/7/99.) The Kimmerles purchased their property on May 6, 1996 from Dr. Melvin H. Chalfen and Mary G. Chalfen. (Plaintiffs' Exhibit 2.)
The residence at 10 Water Street is a two-family house. (Testimony of Bradford 5/4/99; Defendants' Exhibit 5.) From the 1970's to present, Mrs. Bradford allegedly rented the second floor of 11 Water Street to tenants year round and her family lives in the first floor of Water Street during the summers. (Testimony of Bradford 5/4/99.) The apartment on the second floor of Water Street is a two-bedroom apartment. (Testimony of Bradford 5/4/99.) On occasion, Mrs. Bradford also rents the first floor residence on Water Street. (Testimony of Bradford 5/4/99.) Mrs. Bradford and her husband Henry ("Hank") Bradford have two children, Thomas Bradford and Wendy Bradford. (Testimony of Bradford 5/4/99.)
The next door neighbors on the garage side were the Chalfens. (Testimony of Bradford 5/4/99.) The Chalfens were long time friends and acquaintances of the Bradfords. (Testimony of Dr. Chalfen, p. 12; Testimony of Mrs. Chalfen, Vol. 2, p. 42.) According to the Chalfens, disputes arose as to the usage of the driveways in the 1980's. (Testimony of Dr. Chalfen, p. 21.) The Chalfens wrote a letter, had a survey done and painted a property line on the driveway in 1986. (Testimony of Mrs. Chalfen, Vol. 1, p. 44 and 45; Defendants' Exhibit 8.) Mrs. Bradford denies receiving any written or oral communication whatsoever from the Chalfens about driveway usage until Mrs. Chalfen erected a cinder block wall in 1989. (Testimony of Mrs. Bradford 5/4/99.) This wall was up for 10 days to 2 weeks. (Testimony of Bradford 5/4/99.) After the wall was erected, some negotiation ensued to resolve the dispute but the results of the negotiations were inconclusive. In 1993, Mrs. Lucia Johnstone was a tenant of the Bradfords. She witnessed the painted property line and entered into a lease that made no reference to parking. (Testimony of Johnstone 5/7/99.) She was, however, instructed to keep her car parked and drive along the Bradfords side of the painted line by Mrs. Bradford. (Testimony of Johnstone 5/7/99.) Mrs. Johnstone, a real estate broker, subsequently became the listing agent for the CT Page 9439 Chalfens when they decided to sell their 11 Water Street property. (Testimony, of Johnstone 5/7/99.)
The defendants visited 11 Water Street in the spring of 1996, entered into a purchase and sale agreement and purchased 11 Water Street on May 6, 1996. (Testimony of Mr. Kimmerle 5/7/99; Plaintiffs' Exhibit 2.) The Kimmerles made it clear at and before the closing they desired the right to put a fence around their property. (Testimony of Mr. Kimmerle 5/7/99.)
They met Mrs. Bradford around the Independence Day 1996 weekend. (Testimony of Mr. Kimmerle 5/7/99.) She identified the painted line to Mr. Kimmerle at that time and made it clear each property owner was to obey the painted boundary line. (Testimony of Mr. Kimmerle 5/7/99; Plaintiffs' Exhibits 6 and 8.) The Kimmerles sought permission and believed they had it from the Borough of Stonington Zoning Enforcement officer to erect a fence along their southerly boundary line in the driveway in August 1996. (Testimony of Mr. Kimmerle 5/7/99.) They commenced work in August 1996 but were informed that they needed to seek a permit from the Borough of Stonington Planning and Zoning Commission. (Testimony of Mr. Kimmerle 5/7/99.) After the fence was erected, Mrs. Bradford alleged that she has difficulties backing in and out of her driveway and in entering and exiting cars parked in her driveway. In September 1997, this lawsuit was commenced.
 Discussion
Section 52-570 of the Connecticut General Statutes provides that "[a]n action may be maintained by the proprietor of any land against the owner or lessee of land adjacent, who maliciously erects any structure thereon, with intent to annoy or injure the plaintiff in his use or disposition of his land." A cause of action for malicious erection of a fence requires the following six elements which must be established: (1) A structure erected on the owner's (defendant's land); (2) a malicious erection of the structure; (3) the intention to injure the enjoyment of the adjacent land because of the structure; (4) an impairment of the value of the adjacent land because of the structure; (5) the structure is useless to the defendant; (6) the enjoyment of the adjacent land is in fact impaired. Whitlock v. Uhle,75 Conn. 423, 426 (1903); DeCecco v. Beach, 174 Conn. 29 (1977).
 The element of malicious intention has been characterized as: an intention which must be discovered mainly from the fact CT Page 9440 that the structure does impair the value of adjacent land and injure the owner in its use, from the absence of the reasonable possibility of any real advantage, whether of profit, protection, or pleasure, in the use of the land, and from the character, location and surroundings of the structure itself. It is quite possible for a structure to bear on its face, as it were, convincing evidence that it was intended for a legitimate purpose, or that it was intended to injure the adjacent land and its owner. Such intention relates to the thing done, its purpose and effect, and does not depend on the existence or non-existence of personal spite or ill-will.
Whitlock, 75 Conn. at 426-27.
In Pressman v. Krause, 3 Conn. Ops. 1063, 1066 (September 12, 1977) (Blue, J.), the court held that the plaintiffs failed to establish a claim for malicious erection of a fence under §52-570 because the plaintiffs failed to demonstrate that the defendants had the necessary "intent to injure'. In reliance uponWhitlock, the court reasoned that if a structure serves a legitimate purpose, it is not affected by the malicious erection of a structure statute. Id. at 1065.
The evidence presented at trial does not support a finding that the Kimmerles maliciously constructed the fence. Four of the six elements required to establish a malicious erection of a fence have not been satisfied. Specifically, the evidence does not establish that the defendants maliciously erected the fence, that the fence was erected with the intention to injure the enjoyment of the Bradfords' land, that there has been an impairment of the value of the Bradfords' land and that the fence is useless to the Kimmerles.
The court finds that the defendants did not construct the fence maliciously or with the intent of impairing the enjoyment of the Bradfords' property. The fence was constructed to secure the Kimmerles' property, protect their child, improve the aesthetics of the front entrance to their residence and create a yard area on the side of their property. (Testimony of Mr. Kimmerle 5/7/99; Testimony of Mrs. Kimmerle 5/7/99.) Since the Kimmerles reside in New Jersey for part of the year, and would not always be present in Stonington, Mr. Kimmerle wanted a fence to prevent persons from using the driveway or entering his yard. (Testimony of Mr. Kimmerle 5/7/99.) Mr. Kimmerle and his wife CT Page 9441 also wanted the fence to protect his son, especially while his son was operating his lemonade stand. (Testimony of Mr. Kimmerle 5/7/99.) Moreover, Mrs. Kimmerle wanted to have a fence because the front door and main entrance of the Kimmerle residence faces the driveway, not Water Street. Like Mr. Kimmerle, Mrs. Kimmerle wanted to create a yard for her son's safety and for their dog. (Testimony of Mrs. Kimmerle 5/7/99; Defendants' Exhibits 4 and 29.) Although a completely fenced in yard does not currently exist, the back portion of the Kimmerle property is now a grassy area with rows of stones leading from the paved portion of the driveway to the garage. (Testimony of Mrs. Kimmerle 5/7/99; Defendants' Exhibit 3.)
The fence does not impair the value of the Bradfords' property. The Bradfords claim is not typical of a malicious erection of fence claim because the fence at issue does not impair the Bradfords' view of an ocean or waterfront and does not prevent access to a property or a public resource, such as a beach. At most, the fence permits the Bradfords to use only the property to which they have record title. Evidence was introduced to establish that the fence does not encroach on the plaintiffs' property, and even the plaintiffs' expert testified to this fact. (Testimony of Scanlon 5/4/99.) Neither Mrs. Bradford nor Mr. Scan Ion provided any monetary estimate as to the amount the fence had allegedly decreased the value of the Bradfords' property.
The fence is not useless to the Kimmerles. The fence is a security measure for their property, provides a grassy yard area and protection for their child and is an aesthetic improvement to their home.
The evidence does not support that defendants maliciously erected the fence. Thus, judgment will enter for the defendants on the first count of the plaintiffs' complaint.
To prevail on the second count of the complaint, plaintiffs must prove the four required elements of a private nuisance by a preponderance of the evidence. However, the evidence presented at trial does not demonstrate that the fence is unreasonable or unlawful or that the fence has a natural tendency to create danger and inflict injury on person or property. Because the plaintiff cannot establish all four elements, judgment on the second count should be entered for the defendants.
The evidence presented at trial does not support the CT Page 9442 Bradfords' claim for nuisance under applicable law. The fence does not have a natural tendency to create danger and inflict injury on person or property and is not unreasonable or illegal. Plaintiffs claim the fence has a natural tendency to create danger or inflict injury because it makes it difficult to enter and exit the driveway and because it causes additional storm water to drain onto the Bradfords' property.
"A nuisance . . . describes ab inherently dangerous condition that has a natural tendency to inflict injury upon persons or property." Quinnett v. Newman, 213 Conn. 343, 348, 568 A.2d 786
(1990). In order to recover on a nuisance action, a plaintiff must prove that "(1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the [plaintiff's] injuries and damage." Tomasso Brothers, Inc. v.October Twenty-Four, Inc., 221 Conn. 194, 197, 601 A.2d 1011
(1992), aff'd, 230 Conn. 641, 646 A.2d 133 (1994). Nuisances are characterized as either public or private. An actionable nuisance must contain each of the essential elements of either a public or private nuisance. Ayala v. B B Realty Co., 32 Conn. Sup. 58,337 A.2d 330 (Super.Ct. 1974). "A private nuisance exists only where one is injured in relation to a right which he enjoys by reason of his ownership interest in land." Cruz v. Tosado, No. CV531845 (May 22, 1995) (Hennessey, J.), quoting Webel v. YaleUniversity, 125 Conn. 515, 524 7 A.2d 215 (1939).
Mr. O'Neill, a licensed professional engineer in Connecticut, explained that due to the physical characteristics of Water Street, the low speeds of vehicles on Water Street, and the low volume of vehicles on Water Street, the reduced sight line distance in exiting the Bradfords' driveway does not create a hazard for a prudent driver. (Testimony of O'Neill 5/6/99; Defendants' Exhibit 16.) neither Mr. Scanlon nor any one from his office gave an opinion as to sight line distances to rebut Mr. O'Neill's opinion.
Rather, the only opinion Mr. Scanlon rendered concerning entering and exiting the Bradfords' driveway was that the fence made entering and exiting more difficult. (Testimony of Scanlon 5/6/99.) According to Mr. Scanlon, in backing out of the driveway, because of the narrow width of Water Street, more turns than a simple k-turn are required to turn travel north on Water CT Page 9443 Street. (Testimony of Scanlon 5/6/99.) Even if the court were to accept Mr. Scanlon's testimony that backing out of the driveway is difficult, this fact alone does not indicate that the driveway is a hazardous or dangerous condition.
Mrs. Bradford did not recount any personal injuries or any injuries to her vehicle as a result of the change in sight line. The Chief of Police for the Borough of Stonington, David Erskine, testified that there were not any accidents reported to the police in 1997 or 1998 in the vicinity of the driveway at issue. (Testimony of Chief Erskine 5/7/99.) Simply because it may be "more difficult" to back out of a driveway, does not render the fence a nuisance.
The fence's height was modified so that the last panel closest to Water Street was removed in March, 1997. Thus, the existing house and picket fence are the barriers for the driver that pre-existed the fence's construction. (Testimony of Mr. Kimmerle 5/7/99.) The situation has not changed except that the picket fence was moved a foot closer to the Kimmerles' house. (Id.) The difficulty in parking the cars and entering or exiting the vehicles was not proven as the distances from the fences are adequate to enter and exit the vehicles on the Bradford side of the driveway. (Testimony of D. O'Neill 5/6/99 and Mr. Kimmerle 5/7/99.) Although Mr. Scanlon used AASTO standard, the actual large vehicles found by Mr. Kimmerle on the Bradford side show sufficient space was there to use the driveway.
With respect to drainage, Mrs. Bradford testified that storm water flowed onto her property but neither Mr. Scanlon nor any engineer from Scanlon's office rendered an expert opinion concerning drainage. (Testimony of Mrs. Bradford 5/4/99.) However, Mr. O'Neill testified that the drainage of storm water across the parties' driveways has not been detrimentally altered by the construction of the fence. (Testimony of O'Neill 5/6/99; Defendants' Exhibit 16.) Both before and after construction of the fence, storm water generally flows on the driveway in a southwest direction. (Testimony of O'Neill 5/6/99.) In fact, in large storm events, the fence's proximity to the surface of the Kimmerles' driveway will actually decrease the amount of storm water draining to the Bradfords' property from the amount which would drain prior to construction of the fence. (Testimony of O'Neill 5/6/99; Defendants' Exhibit 16.)
Mrs. Bradford did not testify that she has incurred damages CT Page 9444 as a result of the alleged change in storm water runoff and did not produce any documents to demonstrate that she has incurred damages. Without any evidence that repaving has been necessary, that damage has been caused to vehicles, or that a person has fallen in crevasses created by the runoff, the storm water runoff from the fence cannot be deemed a nuisance. In fact, Mr. O'Neill testified that he did not witness any pittings or erosion of the pavement on the Bradfords' driveway that would be the evidence of unreasonable storm water runoff. (Testimony of O'Neill 5/6/99.)
The evidence also does not demonstrate that the fence is unlawful or unreasonable. The fence is not unlawful because the Stonington Planning and Zoning Commission approved the fence. (Testimony of Mr. Kimmerle 5/7/99.) Moreover, the fence itself is reasonable. It is four feet in height, white in color and a few inches from the property line. (Testimony of Mr. Kimmerle 5/7/99.) Construction and maintenance of the fence is neither unreasonable or unlawful. The court will enter judgment for the defendants on the second count of the complaint.
To prevail on their claim for prescriptive easement, plaintiffs must prove by a preponderance of the evidence that they used a defined portion of the defendants' driveway under a claim of right (allegedly authorized in the tenants' leases), in an open, visible, continuous manner for an uninterrupted period of fifteen years. Mr. and Mrs. Bradford purchased the property in 1971 and brought this action in 1997. In the interim years, there was a gray line painted on the driveway in 1986, a cinder block wall built by the predecessors in title to the Kimmerles, Dr. and Mrs. Chalfen in 1989, and a fence built by the Kimmerles in 1996. Therefore, the only years during which there could have been any uninterrupted fifteen year period is from 1971 to the summer of 1986. Although Mrs. Bradford testified that she and her tenants I continuously used a portion of the defendants' driveways during this time period under a claim of right, the plaintiff's uncorroborated, self-serving testimony does not constitute a preponderance of the evidence necessary to support a finding of prescriptive easement. Instead the credible evidence shows that there was implied consent by the Chalfens for the Bradfords and such tenants as they had from time to time to use a portion of their driveway. Mrs. Bradford did not substantiate her testimony by calling any members of her family or any of her former tenants, and did not produce any leases to substantiate her testimony that these leases contained language to establish her claim of right through the tenants instead of establishing they CT Page 9445 were mere trespassers on what is now the Kimmerles' property. In fact, the only former tenant to testify, Lucia Johnstone, produced a lease which did not authorize the tenant to use more than the Bradfords' portion of the driveway. Johnstone stated that she was told by Mrs. Bradford to stay on the Bradfords' side of the property as defined by the painted line in the driveway. The preponderance of the evidence does not support a fifteen year uninterrupted use of the defendants' driveway.
The evidence does not support a finding that plaintiffs and their tenants acting under a claim of right, had open, visible, continuous and uninterrupted use of certain portions of the defendants' driveway for fifteen years.
Section 47-37 of the Connecticut General Statutes provides that "[n]o person may acquire a right-of-way or any other easement form, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years." "To establish an easement by prescription it is absolutely essential that the use be adverse. It must be such as to give a right of action in favor of the party against whom it has been exercised." Whiting v.Gaylord, 66 Conn. 337, 344 (1895). In order to prove such adverse use, the party claiming to have acquired an easement by prescription must demonstrate that the use of the property has been "open, visible, continuous and uninterrupted for fifteen years and made under a claim of right." Andrzejczyk v. AdvoSystems, Inc., 146 Conn. 428, 431 (1959); Klar Crest Realty, Inc.v. Rajon Realty Corporation, 190 Conn. 163, 168 (1983). "In a claim for prescriptive easement, the burden is on the party claiming the right." Swenson v. Dittner, 183 Conn. 289, 294
(1981). Connecticut law refrains from extinguishing or impairing property rights by prescriptive unless the party claiming to have acquired an easement by prescription has met each of these stringent conditions. Westchester v. Greenwich, 227 Conn. 495,501 (1993).
Plaintiffs' claim for prescriptive easement is limited by the allegations of the complaint. Plaintiffs allege that portions of the defendants' driveway have been used for the purposes of turning into and out of the driveway, traveling to the garage and entering and exiting vehicles. Plaintiffs have not claimed or alleged a prescriptive easement or a claim for adverse possession to park their vehicles on the defendants' portion of the driveway. CT Page 9446
The testimony of Mrs. Bradford and the speculative testimony of Mr. Scanlon are not sufficient to establish fifteen years of consecutive usage by Mrs. Bradford and her tenants. The plaintiffs did not call any additional witnesses, such as Mrs. Bradford's grown children or any prior tenants, to support her assertions as to the usage of the driveways.
This is particularly true where Mrs. Bradford's credibility was significantly impaired by the lack of other evidence. Mrs. Bradford testified that all of her leases for her Water Street apartments indicated that the tenants were authorized to use a portion of the then Chalfens' driveway. (Testimony of Bradford 5/4/99.) However, on cross-examination Mrs. Bradford admitted that she does not have a single copy of the leases or even a draft lease purporting to demonstrate that the tenants were authorized by lease to use a portion of the Chalfen driveway. (Testimony of Bradford 5/4/99.) In fact, Mrs. Bradford could not even remember who her tenants were for many of the years in issue. (Testimony of Bradford 5/4/99.)
In contrast to Mrs. Bradford's testimony, Mrs. Johnstone testified that as a tenant she was told by Mrs. Bradford to try to stay on the Bradfords' side of the driveway as defined by a painted line and not use the Chalfens' driveway. (Testimony of Mrs. Johnstone 5/7/99.) To support her testimony, Lucia Johnstone produced a lease from 1993, which was silent as to parking. (Testimony of Johnstone 5/7/99; Defendants' Exhibit 38.) Mrs. Johnstone also explained that she drafted many of many leases for the Bradfords' tenants and the leases she drafted were silent as to parking. (Testimony of Johnstone 5/7/99.)
Mrs. Bradford, prior to filing this lawsuit, never asserted that she thought she had a prescriptive easement by continuous usage of the other driveway. Lucia Johnstone, John O'Brien, Mr. Scanlon and Deborah Tedford were never told by Mrs. Bradford that she thought she was entitled to use more than her portion of the I driveway. (Testimony of Johnstone 5/7/99; Testimony of O'Brien 5/7/99; Testimony of Scanlon 5/6/99; Testimony of Tedford 5/7/99.) Mrs. Bradford never raised the issue of a prescriptive easement to Mr. Kimmerle when Mr. Kimmerle proposed modifying the garage and fence, while Mr. Kimmerle was constructing the fence, or at any zoning commission meetings regarding Mr. Kimmerle's proposal to construct the fence. CT Page 9447
In Pressman v. Krause, 3 Conn. Ops. 1063, 1066 (September 12, 1997) (Blue, J.), the court held that the plaintiffs failed to establish a claim for the prescriptive easement. The court reasoned that the plaintiffs' "evidence that their use of the asserted right-of-way was open, visible, continuous and uninterrupted for fifteen years is not credible in light of all the evidence in the case." Id. at 1065. As in Krause the plaintiffs' testimony in this case is simply not credible.
There is no evidence other than Mrs. Bradford's testimony that the tenants actually used a portion of the Chalfens' driveway for fifteen consecutive years, or that they were acting under a claim of right. Both tests must be met for the Bradfords to prevail but that has not been done. The Chalfens' testimony contradicts a claim of open, notorious anc continuous adverse use. There was implied permission from the Chalfens' for the Bradfords and their tenants to use a portion of their property. Mrs. Chalfen recalls that problems with respect to use of the driveway became very bad in 1985 and 1986, but that prior to 1985, "one could say they were doing it with permission." Testimony of Mrs. Chalfen, Vol. 1, p. 63.) Dr. Chalfen recalls that prior to 1980, there was the visual problem of many cars in the driveway, but the Chalfens "didn't really object" because the cars were not getting on the Chalfens' driveway. (Testimony of Dr. Chalfen, p. 38.) Prior to 1980, Dr. Chalfen just thought the number of cars were a problem aesthetically. (Testimony of Dr. Chalfen, p. 39.) The tenants which really set the problem off rented from the Bradfords in 1986. (Testimony of Dr. Chalfen, p. 22.) Dr. Chalfen believes that it was an evolution or increase in overuse of the Bradfords' driveway and garage. (Testimony of Dr. Chalfen, p. 26.)
In Deregibus v. Silberman Furniture Co., 121 Conn. 633,637-40, 186 A. 553, reversed 124 Conn. 39, 197 A. 760 (1938), the Connecticut Supreme Court stated in deciding whether a tenant was acting under claim of right:
. . . Unless the lease is effective to cover the right of way, the plaintiff's adverse use of the way under it cannot enure to the benefit of the lessor. If the tenant possesses land as tenant, his possession enures to that of the landlord. But if he occupies it, not under the lease, but as a trespasser upon the land of a stranger, the trespass is his, and the penalties and compensations, if any, of the trespass are his also. (Internal citations omitted.) CT Page 9448
The plaintiffs' count for prescriptive easement also fails because the evidence does not support that there was uninterrupted usage of the Chalfens' property under a claim of right for fifteen years. Periods of interruption of the alleged usage were caused by Mrs. Chalfen painting a line to divide the properties in 1986 and constructing a cinder block wall in 1989. (Testimony of Mrs. Chalfen, Vol. 1, pp. 77-79.) The grey line and cinder block wall would likely be obvious to any tenants as Mrs. Johnstone observed the grey line and testified that Mrs. Bradford advised her to obey that line. Attorney Tedford and Mr. Scanlon admitted observing flower pots dividing the center driveway. (Testimony of Mrs. Johnstone 5/7/99; Testimony of Tedford 5/7/99; Testimony of Scanlon 5/6/99.) Moreover, the gray line is depicted in a number of the photographs in evidence. (Plaintiffs' Exhibits 11 and 14.)
The claim for a prescriptive easement must be denied.
Section 47-31 provides that the "court shall hear the several claims and determine the rights of the parties, whether derived from deeds, wills or other instruments or sources of title, and may determine the construction of the same, and render judgment determining the question and disputes and quieting and settling the title of the property. Where a party pursuant to § 47-31
seeks to quiet title, the trial court should first determine in which party record title lies, and then determine whether adverse possessions has divested the record owner of title. Cahill v.Cahill, 75 Conn. 522, 526 (1903); Rocje v. Fairfield,186 Conn. 490, 497 (1982).
On April 28, 1998, by execution of a statutory form quit-claim deed, the Kimmerles merged their two lots of record into one lot. (Testimony of Mr. Kimmerle 5/7/99; Defendants' Exhibit 26.) The two lots are described in metes and bounds as one lot and are identified as one lot on a property survey prepared by George J. Lynn M. Kimmerle Property located at #11 Water Street, Stonington, Borough of Stonington, Connecticut Scale 1" = 10' August 14, 1996 J. Dempsey Associates Revised April 8, 1998 and Revised April 23, 1998 filed with the Town of Stonington. (Defendants' Exhibit 26.)
To prevent the clouding of title, plaintiffs seek a declaration of clear title to their property as described in the April 28, 1998 deed. It is undisputed that any discrepancy which CT Page 9449 may exist between the Dempsey survey markers and Mr. Scanlon's survey are insignificant. (Testimony of Scanlon 5/7/99.) Moreover, other than the plaintiffs' claim, there are no other asserted claims to title. Because the evidence does not support a finding of prescriptive easement, judgment will be entered for defendants on their counterclaim and the court hereby declares the Kimmerles to have a clear title to 11 Water Street property.
 Conclusion
At the conclusion of the plaintiffs' case, the defendants moved for dismissal for failure to make out a prima facie case. The court reserved decision. The court now denies the motion to dismiss and decides the case on all of the evidence.
On the first count, malicious erection of a fence the court finds that of the six required elements, the plaintiff failed to prove that the fence was erected maliciously; that it was intended to impair the enjoyment of the plaintiffs' property and that it impaired the value of the plaintiffs' land or was useless to the defendants. Accordingly, judgment must enter for the defendants on the first count.
On the second count of nuisance, the court finds that the plaintiff has failed to prove the essential elements of nuisance specifically that it had a natural tendency to create danger or inflict injury. At most, they showed that it was more difficult to enter or exit the driveway. However, there was no proof of any accidents or injuries as a result of the fence. Judgment must therefore enter for the defendants on the second count.
On the third count, for prescriptive easement, the court finds that the plaintiffs have failed to prove that the plaintiffs and their tenants had adverse use of the land of the defendant continuously for fifteen years. The court orders judgment for the defendant on the third count.
Finally, on the defendants' counterclaim for quiet title, the court finds that the disputed area is the property of the defendants as set forth in the deed dated April 28, 1998 (Defendants' Exhibit 26). Since the evidence does not support a finding of prescriptive easement, judgment must enter for the defendants on the counterclaim thus giving them clear title to the disputed area. CT Page 9450
Judgment enters for the defendants on all three counts of the complaint and on the counterclaim.
D. Michael Hurley, Judge Trial Referee